HEARD NOVEMBER TERM, 1877.

## JONES *vs.* MASSEY.

Where a will made a specific allotment of slaves, by name, to legatees, "to be laid off. allotted and vested on the division and partition of my estate," which division and partition the will directed, it was held that until such division and partition was made the slaves did not vest in the legatees but remained part of the estate.

Where a will directed a partition and division of the estate, real and personal, to be made, but did not direct how it should be made, a partition by the authority of the executor, with the consent of the guardians of an infant, was held to be void as against the infant.

A defendant cannot avail himself of the defense of the Statute of Limitations unless he sets it up as a defense by his answer as required by § 97 of the Code of Procedure.

Where the terms of a reference direct the Referee to take testimony and report the same, he must confine himself to the direction, and he has no authority to determine issues of law and fact.

BEFORE MACKEY, J., AT LANCASTER, AUGUST, 1876.

This was an action by Churchill B. Jones, trustee of Sarah Jones, and guardian of James R. Massey, Jr., against James R. Massey and others, defendants.

The facts of the case are fully stated in the report of the Referee, to whom it had been referred to take the testimony, and in the decree of the Circuit Court.

The report is as follows:

Mrs. Elizabeth Massey died in 1859, leaving a will, of which Dixon Barnes was sole executor. She devised to her son, the defendant, James R. Massey, certain mills on her plantation on the Catawba River and one hundred acres of the land surrounding; also, one undivided half of the remainder of said plantation. She also bequeathed to her said son, and to her daughters, respectively, certain personal property, in said will specified. She then disposes of the residue of her real and personal estate, including all of her slaves, as follows: One-fourth thereof each to her daughter Elizabeth Massey, (now Elizabeth Beckham,) her daughter Sarah Jones and her son, the said James R. Massey, and the remaining one-fourth in the proportions of one-third of said one-fourth each to James R. Massey, Jr., Charlotte A. Massey, (now Charlotte A. Beckham,) and Mary Elizabeth Massey, children of a predeceased daughter of testatrix. The will directs the allotment of slaves, naming the slaves which she desires each legatee shall have, and directs that they "take said negroes at their appraised value and account for

said negroes at their appraised value in the division, to my other other legatees."

The complaint herein was filed on the 20th day of June, 1871, alleging, amongst other things, that the several parties took possession of their slaves, after an appraisement, in accordance with the provisions of the said will. That the defendant, James R. Massey, has been in the exclusive enjoyment of all of said realty since the beginning of the year 1861, and asks for an equalization and settlement of the shares of the slaves and other personalty, and for an accounting against the defendant, James R. Massey, for rents and profits, and for partition of the land.

The defendant, James R. Massey, denies his liability to pay on account of the slaves; denies that there was an appraisement and setting off of slaves, as directed by the will, and alleges that they remained upon the plantation as common property until they were emancipated; denies that there were any rents and profits of the plantation, and alleges that he cultivated no more than his proportionate share of the land.

The answers of the other defendants do not controvert any material allegation of the complaint.

An order made in the case on the 19th of February, 1872, directs that "it be referred to John M. Beaty, as a Special Referee, to take the testimony offered by the various parties litigant to establish their various rights and claims, and that he do report the same to this Court, with his findings in any special matter. That Daniel W. Brown, executor of Dixon Barnes, deceased, have leave to account for the administration by his testator of the estate of Mrs. Elizabeth Massey;" and, by a subsequent order, the undersigned was appointed Referee in the room of the said John M. Beaty.

The defendant, D. W. Brown, has not been before the Referee, and the plaintiff appears to have abandoned that branch of the case relating to the account of Dixon Barnes.

Testimony has been taken bearing upon the other issues made by the pleadings, except as to the partition of the lands, now pending.

The defendant, James R. Massey, on the opening of his defense before the Referee, gave notice that he pleaded the Statute of Limitations to the various claims set up against him; also notice of discount against any recovery which might be found against him by demands in his favor against the estate of testatrix for money due by her as said defendant's guardian, and offers evidence in support of said claim.

A similar claim was presented in favor of each of the defendants Charlotte A. Beckham and Mary Elizabeth Massey, and the returns of Mrs. E. Massey, as their guardian, offered in support thereof.

After hearing the testimony and the argument of counsel, the Referee presents the following findings of facts and conclusions of law:

*Findings of Fact:*

I. That about the 1st of January, 1861, the negroes named and allotted by Mrs. Massey in her said will were valued by certain persons, who were called together for the purpose by Dixon Barnes, the then executor of said will, and the said negroes placed in the possession of the parties to whom they were severally allotted, or to the guardian of such of said parties as were then under age. That the defendant James R. Massey was then a minor, and was represented at the appraisement of the negroes by his guardian, Francis P. Ingram, who assented to what was done. That the defendants Mary Elizabeth and Charlotte A. Massey were also minors, and were represented by Dixon Barnes, whether as guardian or as executor of Mrs. Elizabeth Massey, who was their guardian at her decease, does not appear.

II. That the aggregate value of the slaves allotted to James R. Massey was seven thousand five hundred dollars ($7,500). The aggregate value of Elizabeth Massey's, (now Elizabeth Beckham,) three thousand two hundred dollars ($3,200). Of Mary Elizabeth Massey's, two thousand eight hundred and fifty dollars ($2,850). And of Charlotte A. Massey's, (now Charlotte A. Beckham,) two thousand three hundred and fifty dollars ($2,350). Making the total value of all the negroes the sum of fifteen thousand eight hundred and fifty dollars ($15,850).

III. That James R. Massey received, in excess of slaves, the sum of three thousand five hundred and thirty-seven 50-100 dollars ($3,537.50); Mary Elizabeth, in excess of her share, one thousand four hundred and seventy-nine 17-100 dollars ($1,479.17); and Charlotte A. Beckham, in excess of her share, one thousand and twenty-nine 17-100 dollars ($1,029.17). That Elizabeth Beckham received less than her share the sum of seven hundred and sixty-two 50-100 dollars ($762.50). That no negroes were allotted to Sarah Jones or to James R. Massey, Jr.; the will having directed

that they receive their shares in money, which, according to the said valuation, would be the sum of three thousand nine hundred and sixty-two 50-100 dollars for Mrs. Jones, and the sum of one thousand three hundred and twenty 83-100 dollars for J. R. Massey, Jr.

IV. That the slaves allotted to James R. Massey remained upon the plantation devised by Mrs. Massey, superintended by his said guardian, up to the period of his ward's majority, and by said Massey after that time, until they were emancipated in 1865. That James R. Massey attained his majority on the 16th day of September, 1862. That the slaves of Mary Elizabeth and Charlotte A. Massey were hired by Dixon Barnes to the said F. P. Ingram, guardian, on the day of the appraisement, for the ensuing year, and that they, too, remained upon the plantation in the service of James R. Massey until they were emancipated. The slaves allotted to Elizabeth Massey were taken away by her.

V. That besides the negroes there were other articles of personalty not specifically willed, and belonging to the residuary estate, worth, in the aggregate, the sum of twelve hundred and fifty-six dollars ($1,256). That James R. Massey received of said property (consisting principally of corn and other supplies for the plantation) to the value of eleven hundred and fifty six dollars, his guardian assenting thereto; and that the defendant Elizabeth Beckham received of the same to the value of one hundred dollars.

VI. That the defendant James R. Massey has been in the exclusive possession of all of the lands devised by the said will, from 1861 to 1873, inclusive, and that the rental value of said land (exclusive of the profits of the mills) was, for each of said years, as follows: For 1861, the sum of $1,000; for 1862, $1,000; for 1863, $500; for 1864, $500; for 1865, no value; for 1866, $2,250; for 1867, $1,000; for 1868, $1,750; for 1869, $1,600; for 1870, $1,200; for 1871, $1,200; for 1872, $1,400; for 1873, $1,200; making the total rental value for all the years fourteen thousand six hundred dollars ($14,600).

VII. That during the same period the said defendant expended for improvements, which have been of profit to the estate, the sum of three hundred dollars, ($300,) and that he has paid the taxes on the land during the same time to the amount of five hundred and fifty-two 21-100 dollars ($552.21).

VIII. That the profits of the mills have been, during the same period, the sum of nine thousand one hundred dollars, being at the average rate of seven hundred dollars per year.

IX. That there was due to the said James R. Massey, from the estate of the said Elizabeth Massey, on account of the said guardianship claim, up to January 1st, 1861, the sum of three thousand one hundred and fourteen 60-100 dollars, and that the returns of Elizabeth Massey, guardian of the defendants, Charlotte A. and Mary Elizabeth, do not show any sum due by said guardian to either of said wards.

X. That the lands devised under said will aggregate seventeen hundred and fifty-one acres. .

*Conclusions of Law:*

I. That the defendants James R. Massey, Mary Elizabeth Massey and Charlette A. Beckham should pay the said excess received by them severally over their respective shares in slaves as aforesaid, with interest from the first day of January, 1861, to the plaintiff and to the defendant Elizabeth Beckham, in the proportion of three thousand nine hundred and sixty-two 50-100 dollars ($3,962.50) to the plaintiff as trustee for Sarah Jones, one thousand three hundred and twenty 83-100 dollars ($1,320.83) to the plaintiff as guardian of James R. Massey, Jr., and seven hundred and sixty-two 50-100 dollars ($762.50) to the defendant Elizabeth Beckham, and with interest on said sums respectively from the first day of January, 1861.

II. That of the said sum of eleven hundred and fifty-six dollars ($1,156.00), the value of personal property not specifically willed, and received by James R. Massey as aforesaid, the said James R. Massey should pay one-fourth each to the plaintiff as trustee for Sarah Jones, and to the defendant Elizabeth Beckham; and one-third of one-fourth of said sum each to the defendants Mary Elizabeth Massey and Charlotte A. Beckham, and to the plaintiff as guardian of James R. Massey, Jr. And that of the said sum of one hundred dollars, the value of said personalty received by Elizabeth Beckham, the said Elizabeth Beckham should, in like manner, pay the one-fourth each to the plaintiff as trustee for Sarah Jones and to the said James R. Massey, and one-third of one-fourth each to Mary Elizabeth Massey, Charlotte A. Beckham and to the plaintiff as guardian of James R. Massey, Jr.

III. That from the said sum of fourteen thousand six hundred dollars, the aggregate of rents as aforesaid, there should be deducted the sum of three hundred dollars for repairs, and the further sum of five hundred and fifty-two 21-100 dollars paid out for taxes as aforesaid. That the said sum of rents should then be further reduced in the proportion as one hundred is to seventeen hundred and fifty-one. That the remainder should then be divided by two; that after the division by two the residue of said sum should be applied by the defendant James R. Massey as far as may be necessary in satisfaction of the said debt of three thousand one hundred and fourteen 60-100 dollars found to be due to said defendant from the estate of Elizabeth Massey on guardianship accounts, as aforesaid, with interest on said sum from the first day of January, 1860; the defendant James R. Massey to be charged with interest upon that portion of said rents termed the residue, after the division by two as aforesaid, from the end of each rent year as the said rents would accrue. That after the satisfaction and payment of the said guardianship debt, the defendant James R. Massey should from the balance of said rent moneys, with the accumulations of interest, pay one-fourth of said balance and interest each to the plaintiff as trustee of Sarah Jones, and to the defendant Elizabeth Beckham, and one-third of one-fourth to the defendants Mary Elizabeth Massey and Charlotte A. Beckham, and to the plaintiff as guardian of James R. Massey, Jr.

IV. That the defendant James R. Massey is not liable to pay to the other parties in interest any portion of the profits of the mills.

*Exceptions by Defendant, James R. Massey, to Report of Referee:*

I. Because, although under the order of reference no authority to decide either issues of law or fact is conferred, he has undertaken in his report to do both.

II. Because, although by the order of reference he was only empowered "to take the testimony offered by the various parties litigant to establish their various claims and to report the same to the Court with his findings in any special matter," he has not only undertaken to decide that this defendant is bound by law to account for the value of sundry slaves and other property belonging to the estate of Mrs. Elizabeth Massey, deceased, and for rent of lands belonging to said estate, but has also held this defendant to an accounting and adjudged him to be chargeable with large balances of money on said account.

III. Because the executor of Mrs. Elizabeth Massey's will never assented to the legacy of the slaves contained in said will, with the estimated value of which this defendant is charged in said report.

IV. Because the assumption by the Referee, in his report, that the executor had assented to the legacies, and that a partition of the personal estate of the testatrix, in accordance with the provisions of her will, was made on the 1st day of January, 1861, binding on this defendant, who was then a minor, under twenty-one years old, is wholly unwarranted by the law and testimony.

V. Because, even if such partition was or could have been made, the slaves and other property charged in the report against this defendant could only have been received by his guardian, Francis P. Ingram; and that, according to the conditions of the bequest, only upon his accounting to the other parties for the excess of their value over the share of this defendant under the will. The Referee erred in assuming that said guardian did or could become the owner of said slaves without first accounting for said excess.

VI. Because this defendant claims, under the terms of the will, the whole of the land therein mentioned, having signified his election on the partition thereof, now herein pending, to take the same, and to require that the same be vested in him at the appraised value thereof on said partition. The Referee has charged this defendant on an account for the rents thereof.

VII. Because the Referee has overruled and disregarded the Statute of Limitations, formally urged before said Referee, to protect this defendant against the charges made.

*Decree:*

On the 19th day of February, 1872, by an order of this Court, it was referred to John M. Beaty, Esq., a Special Referee, to take the testimony under the pleadings in this cause, and to report the same with his findings thereon.

W. M. Conners, Esq., now deceased, was afterwards, on motion, substituted for the said Referee, and took the testimony and made his report thereon, as required by the said order.

The issues in the cause came up for trial before me at the May Term, 1876, of the Court of Common Pleas of Lancaster County, upon the report of the Referee and the exceptions thereto filed by the defendant, James R. Massey.

At the hearing of the report, and the argument thereon, additional testimony was taken· upon the issues of fact involved therein by the defendant, James R. Massey, and the plaintiff, C. B. Jones, both of whom were sworn and examined in open Court.

This additional testimony was taken · on motion of the learned · solicitor for the defendant, and it is hereunto annexed.  In my judgment it tends greatly to confirm the conclusion of the Referee as to the matter of fact to which it specially relates.  The report of the Referee is very comprehensive, and appears to be well considered, both as to its findings of law and fact.  The two first exceptions to the report allege as error that the Referee has undertaken to decide both the issues of law and of fact.

I am of the opinion that under the terms of the order of reference in the cause the Referee was well warranted in undertaking to find upon all questions of fact and of law arising under the pleadings and the evidence herein.  But conceding that the Referee was not required or authorized to find as to issues of law, it is not good ground of exception to his report that it exhibits such gratuitous findings, unless the same can be shown to be erroneous.  This has not been done, and the first two exceptions are therefore overruled.

The third exception alleges that the executor of the will of Mrs. Elizabeth Massey never assented to the legacy of the slaves bequeathed to the defendant, James R. Massey, and that the Referee erred in finding that the executor did assent to such legacy.  The testimony abundantly shows that the executor did so assent, and the third exception is therefore overruled.

The fourth exception must likewise be overruled, for the slaves bequeathed by the testatrix to the defendant, James R. Massey, were specifically named and allotted by the express words of the will, and there was nothing left to be done but to appraise and turn them over to the designated legatee.  They were accordingly appraised and delivered to F. P. Ingram as the guardian of the said defend-, ant, James R. Massey, pursuant to the terms of the will, and with the assent of the executor thereof.  Whether the defendant, James R. Massey, was then a minor or not, is a matter of no legal consequence, for the slaves were allotted by the will and not by the appraisers.

As to the fifth exception, the learned solicitor for the defendant errs in alleging that the Referee, in his report, has assumed that the guardian of James R. Massey did or could become the legal owner of the slaves in question.

On the contrary, the Referee held that the legal title and right of property in the slaves bequeathed to the defendant, James R. Massey, vested in the said minor himself, and not in the guardian, and that they were delivered to the guardian as simply the custodian thereof at their appraised value. This exception is, therefore, overruled.

The sixth exception relates to the rents and profits of the lands. The entire landed estate, with the usufruct thereof, was held and enjoyed for many years by the defendant, James R. Massey, in avowed defiance of the terms of the will and in wanton disregard of the rights of his co-devisees, and both law and equity demand that he shall account for the rental thereof. The sixth exception is, therefore, overruled.

The seventh and last exception refers to the Statute of Limitations. The complaint, by proper averments and prayer, demanded that the defendant, James R. Massey, should be held to account for the slaves and other property received by him in excess of his share under the will, and also for the rents and profits of the land from the first day of January, 1861, until the filing of this complaint, and as long thereafter as he continued in possession and enjoyment of the same. The complaint in this action was filed on the     day of June, 1871.

Notwithstanding the direct averment of defendant's liability for the excess of property received by him, and the demand of the complaint for judgment against him for the rents and profits of the lands, yet he did not, in his answer, plead the Statute of Limitations against any of the plaintiff's demands. He but invoked the statute orally before the Referee, and upon the trial of this cause, when the argument was about to commence on the exceptions to the report, he made a motion for leave to amend his answer by inserting the defense of the Statute of Limitations.

In view of the fact that this cause has been pending on the calendar for five years and that one branch of it has been carried up to the Supreme Court, which Court declared that the defendant, James R. Massey, should account for the rents and profits of the lands down to the time when he elected to take all under the will, I deemed it a just and proper exercise of my discretion, after duly considering all the facts in the premises, to refuse the defendant's motion for leave to amend his answer by inserting the plea of the Statute of Limitations.

By an express provision of the Code of Procedure, the Statute of Limitations must be set up in the answer or the defendant cannot avail himself of it as a defense. In view of that provision of the Code and of the well-settled practice of the Courts upon this point, and the utter want of merit or relevancy of such plea in this action, the seventh exception is also overruled.

The findings of fact by the Referee, as set forth in paragraphs I, II, III, IV, V, VI, VII, VIII and X of the report, have been carefully examined by me, and, in the light of the whole testimony, I am satisfied that they are correct. But the finding contained in paragraph IX thereof, as to the amount due from the estate of Mrs. Elizabeth Massey to the defendant, James R. Massey, is not entirely satisfactory. For if the returns do show such a state of facts as alleged, the executor of Elizabeth Massey, the testatrix, may have had a settlement of this very matter with F. P. Ingram, the latter guardian of the defendant, James R. Massey, and it is difficult to see how such a fact as that stated in the paragraph referred to could be ascertained without making the said F. P. Ingram or his legal representative a party to these proceedings.

This, however, will be passed over for the present, as no point or exception in relation thereto has been made.

The conclusions of law stated by the Referee appear to be fully sustained by the facts in the premises and by the pleadings in the cause.

It is, therefore, ordered, adjudged and decreed that all of the exceptions on the part of the defendant, James R. Massey, to the report of the Referee herein be, and the same are hereby, overruled, and that the said report be, and the same is hereby, confirmed and made the judgment of this Court.

It is further ordered that it be referred to the Clerk of this Court to make the necessary calculation and ascertain the aggregate amount of indebtedness due by the defendant, James R. Massey, to the plaintiff as trustee of Sarah Jones and as guardian of James R. Massey, according to the principles embodied in this decree, and also the indebtedness of the defendant, James R. Massey, to each of the other devisees or legatees of the testatrix, Elizabeth Massey, and also to ascertain what amount is due by any other legatee to the plaintiff or any other party in interest, and that the said Clerk do report the same promptly to this Court, together with any scheme that he may devise for enforcing the principles of this de-

cree, being limited in his work by the conclusions of law and of fact embraced in the report hereby confirmed.

It is further ordered that any party herein interested, on the filing of the report of the Clerk hereby contemplated and directed, shall have the right to move before this Court, at chambers, to confirm the report of the said Clerk, upon giving five days' notice of such motion to the adverse party.

That the branch of this case relating to the partition of the lands having been carried to the Supreme Court and there determined, independently of the other issues, the owelty of James R. Massey in the lands which he has elected to take in the partition thereof will be adjusted in a separate order.

It is further ordered that any party interested in this decree, at the foot thereof, shall be at liberty to move this Court for such other and further orders as may be equitable and proper in giving effect to this decree and placing such party in the enjoyment of his just rights herein.

The necessary costs of partition shall be paid by all the parties in interest in proportion to their respective shares under the will, but the costs of this litigation must be paid by the defendant, James R. Massey.

Defendant, James R. Massey, appealed on the following grounds :

I. Because His Honor erred, it is respectfully submitted, in overruling said exceptions.

II. Because His Honor in and by said decree erred in charging this defendant with the estimated value of certain slaves alleged to have been turned over and delivered to his guardian, Francis P. Ingram, by Dixon Barnes, as the executor of the will of Elizabeth Massey, deceased, on the 1st day of January, 1861.

III. Because the claim of the said plaintiff against this defendant on account of the estimated value of said slaves had become utterly stale, and His Honor erred in overruling this defendant's objection that the great lapse of time, in analogy to the Statute of Limitations, operated as a complete bar against the same.

IV. Because His Honor in like manner erred in withholding from this defendant the benefit of the Statute of Limitations against the claim of the plaintiff on account of the rents and profits of the land mentioned in the decree.

V. Because, inasmuch as this defendant had, more than twelve months before the trial herein, viz., on the reference held by W. M. Connors, Esq., given notice that he relied upon the Statute of Limitations for protection against the claims set up against him by the plaintiff, His Honor erred, it is respectfully submitted, in refusing on the trial to allow to this defendant, by an amendment of his answer, to interpose, in a more, formal manner, the Statute of Limitations as a bar against said claims.

*Moore,* for appellant.

*Allison,* contra.

March 21, 1878. The opinion of the Court was delivered by

WILLARD, C. J. The facts of this case are fully stated in the report of the Referee and the decree of the Circuit Court. The main features of the question depend upon the construction of the will of Mrs. Elizabeth Massey. The testatrix had one son, the defendant, James R. Massey, two daughters, and the children of a deceased daughter. She had a large estate, real and personal, including mills, plantation and slaves. The main features of the will were that James R. Massey was to take the mills with one hundred acres of land adjoining and one-half of her plantation, constituting the family residence. The residue of her estate, real and personal, was to be divided into four parts, of which the said James R. was to take one in addition to the specific devises already mentioned, and the two daughters and the children of her deceased daughter the other three-fourths. The will contemplates a partition of all the estate other than that devised to James R., and prescribes certain rules to be observed on such partition. She directs that upon such partition certain slaves, by name, shall be "allotted" to James R., and certain others, by name, to her daughter Elizabeth. For her remaining daughter and the children of her deceased daughter she makes a provision partly in slaves and partly pecuniary, intended to be equal in pecuniary value, and she directs that for this purpose the slaves thus allotted should be valued on such partition and the allotments of slaves and money equalized. She also directs that her son, James R., should have a right to elect to take the whole of the land upon such partition, and provides as follows: "If my son, James R. Massey, should. decide to take the

lands in this partition at their appraised value, this, with the value of the negroes, will far exceed his one-fourth and put him considerably in debt, having to pay back largely; but he must have a long credit, say ten years, if he should desire it, with interest from the day the partition is made, in equal annual installments."

The first question that arises is, when the children were, by the terms of the will, to take the shares allotted in slaves by name?

The language of the will bearing on the answer to this question is "on the division and partition of the same," [meaning the residue of the estate, real and personal, after the specific devise to James R]. "I allow the negroes to be laid off, allotted and vested as follows." Then follows the specific allotment of the negroes as already stated. It is clear that this provision is to take effect upon the partition of the estate, and that in the mean time the slaves are to remain part of the testatrix's undivided estate.

By what authority the partition is to be made is not stated. If the parties in interest should be competent to make a voluntary partition, such mode of partitioning would be within the intent of the will; if not so competent by reason of minority or other cause, a partition by authority of law would be clearly within her contemplation.

The conclusions just stated as to the construction of the will are derived from the express declarations of its terms, and there is nothing contained in the will demanding that the sense should be modified either to satisfy the other expressions or to render practicable the accomplishment of the testatrix's full purpose. It follows that, to conform to the intent of the testatrix, all the estate not required for the payment of debts and not specifically devised should have been kept together by the executor until partition could be made, and at that time the various provisions of the will as to such residue should have been carried into effect. This would embrace the slaves and that portion or interest in the land not devised to James R., and upon such partition the appraisal of the slave property should be had for the purpose of equalizing the shares; and in the event that James R. should elect to take the whole land, an appraisal of its value should be made and the terms and conditions of the credit to James R. for the amount due by such appraisal, provided he demanded such credit, should be ascertained.

The complaint in this case demands a partition of the real estate and an account, among other things, on the part of James R., for the rents and profits of the realty in his hands and for the personal property held by him in excess of the amount he was entitled under the will to take. This Court held on the former hearing in this cause (7 S. C., 134,) that James R. Massey was entitled to his election to take the lands upon appraisal for the purpose of partition in accordance with the provisions of the will. It was also held that James R. should be required to account for the rents and profits of the land held by him other than his own share down to the time of his election.

It appears by the findings of fact "that about the first of January, 1861, the negroes named and allotted by Mrs. Massey in her said will were valued by certain persons, who were called together for the purpose by Dixon Barnes, the then executor of said will, and the said negroes placed in the possession of the parties to whom they were severally allotted, or to the guardians of such of said parties as were then under age. That the said James R. Massey was then a minor and was represented at the appraisement of the negroes by his guardian, Francis P. Ingram, who assented to what was done." The Referee holds that the results of this appraisement are binding upon James R. Massey, and this conclusion is sustained by the Circuit Court.

The executor under the will had no authority to designate appraisers of the slave property, and the consent of the guardian of James R. could confer no such authority ; nor had he power to cause an appraisement to be made separate and apart from due proceedings had for the partition of the estate, real and personal, and such an assumption of authority could not be validated by the assent of the guardian. The object of the present suit is to obtain that partition among other things, and the allegations of the pleadings and the judgment of this Court upon them entitling the parties to the partition contemplated by the will estop the parties from affirming that any such partition had, previously to the commencement of this suit, been made in accordance with the provisions of the will.

The defendant, James R. Massey, cannot properly be regarded as having bound himself to the results of such irregular appraisement by anything that appears in the case. The only fact on which such

assumed acquiescence can be based is that the real estate and the slaves, with which he is now sought to be charged, remained in his hands, or those of his guardian, up to the time when the slaves were emancipated. It was held on the former hearing in this case, already referred to, that the holding of the real estate by James R., up to the commencement of this suit, could not be regarded as wrongful, so as to forfeit his right of election on partition, inasmuch as it was in the power of any of the parties in interest to institute proceedings for partition, by means of which the possession of the lands devised might have been disposed of agreeably to the provisions of the will. It would follow that, as has been already said, the estate, real and personal, being required under the will to be kept together until partition, that the retaining of the slaves upon the land was in accordance with the provisions of the will and cannot be made ground for holding James R. to a measure of liability different from that fixed by the will. In addition to this, it appears that James R. attained majority in the year 1862, while absent from home in the Confederate army, from which he did not return until near the close of hostilities, and that the slaves were lost by emancipation at the close of hostilities.

The circumstances attending the occupation of the slave property during the short time that elapsed after the return of James R. from military service until the emancipation show no matter of fact from which an intent to change the nature of his rights and liabilities as established under the will; and as at that time slave property was in imminent jeopardy, it is not to be assumed that James R. voluntarily placed himself in such a position that he would be chargeable with the value of the negroes in case of loss by emancipation, whereas, by the construction of the will, such a loss would fall upon the estate at large if it happened to occur before partition was made.

It must be concluded that the Circuit Court erred in holding that James R. Massey was chargeable with the amounts ascertained by the appraisal made by the authority of the executor. It is proper that he should be charged with whatever value he has derived from the use of the slaves, prior to emancipation, over and above the proportion of such value he was entitled to under the will, on the same ground upon which he was required by the judgment of this Court to account for the rents and profits of the lands.

The objection that the Statute of Limitations should have been applied in the accounting for the rents and profits of the land will be next considered.

The Code requires that the defense of the Statute of Limitations shall be taken by answer.—Code, § 97. If, then, the defendant had an opportunity to set up such defense in his answer, he was bound to do so. The complaint prayed an account of the rents and profits of the lands, and the defendant was bound to interpose any defense of which he desired to avail himself growing out of the Statute of Limitations in his answer to the complaint. The Statute of Limitations might constitute either a full or partial defense to the claim to an account. If the right to an accounting was altogether lost under the statute, then it was a full defense; if, on the other hand, the bar was only as to certain transactions entering into the account, leaving the party liable to account as to other matters, then the defense was a partial one only; but in either case it ought to be pleaded that the party may be put on notice of what he is called upon to meet.

It follows that the failure of the defendant to plead the statute barred him from interposing that defense on the trial of the issues. We regard the reasons of the Circuit Court for refusing an amendment by way of setting up the statute as sufficient.

We also concur in the views of the Circuit Court as to the effect of a hearing and decision by the Circuit Court as destroying the force of the exception that the Referee had no authority to submit findings of fact and law, but should have confined himself to reporting the evidence alone, drawn from the terms of the order of reference.

The decree of the Circuit Court and the reports of the Referees must be set aside so far as they are inconsistent with the conclusion already stated, and the cause remanded for further proceedings conformable to this decision.

*McIver*, A. J., and *Haskell*, A. J., concurred.